**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ATLANTIC SUBSEA, INC., | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action<br>No. 23-198 (KMW-EAP) |
| NORTHERN DIVERS USA, INC., *et al.*, | |
| Defendants. | **OPINION** |

APPEARANCES:

RICHARD P. COE, ESQ.
WEIR GREENBLATT PIERCE
35 KINGS HIGHWAY EAST
HADDONFIELD, NJ 08033

    *Counsel for Plaintiff Atlantic Subsea, Inc.*

FIROUZEH NUR-VACCARO, ESQ.
KIM IP LAW GROUP PLLC
129 W. EVENSHAM ROAD
VOORHEES, NJ 08043

    *Counsel for Defendants Northern Divers USA, Inc., and Frank Frosolone*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Atlantic Subsea, Inc., ("Plaintiff") brings this action against Northern Divers USA, Inc. and Frank Frosolone ("Defendants") alleging that Defendants misrepresented the scope of their proprietary and patented cleaning methodology, which induced Plaintiff into contracting with Defendants to supervise various pipe cleaning operations at the Salem generating station in 2015, 2017, 2018/2019, and 2021. Pursuant to this misrepresentation, Plaintiff asserts claims in fraud, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and seeks a declaratory judgment of non-infringement as to Defendants' patent.

On January 13, 2023, Plaintiff filed their Complaint. ECF No. 1. On February 6, 2023, Defendants sought to transfer the case to the Northern District of Illinois. ECF No. 10. On September 30, 2023, the Court denied Defendants' Motion to Transfer. ECF No. 19. Thereafter, on November 27, 2023, Plaintiff filed an Amended Complaint. ECF No. 27. On December 11, 2023, Defendants filed a Motion to Dismiss. ECF No. 36. On January 5, 2024, Plaintiff opposed that motion, ECF No. 44, and on January 15, 2024, Defendant replied. ECF No. 47. For the reasons that follow, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART.**[1]

## II. BACKGROUND

Since 1995, Plaintiff has provided routine cleaning assistance to Public Service Enterprise Group's ("PSEG") electric generating stations at Hope Creek and Salem locations. *See* Amend. Compl. ¶ 9. In January 2015, PSEG asked Plaintiff to consult with Defendants regarding the clearance of a pipe at the Salem generating station because Defendants had "applied for a patent for a proprietary technique to clear pipes.[.]" *Id.* ¶ 10. Plaintiff asserts that they relied upon

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

Defendants' representations that the patent applied to the cleaning operations Plaintiff sought to undertake for PSEG. *Id.* ¶ 22. Plaintiff and Defendants worked together to complete additional pipe cleanings at the Salem station in 2017 and 2018/2019. *Id.* ¶¶ 17, 19.[2] However, in November of 2021, Plaintiff became suspicious of Defendants' patent claim and investigated its possible application to the cleaning that the Parties engaged in, and assert that the patent, in fact, does not apply to the cleaning operations that Plaintiff performed for PSEG. *Id.* ¶¶ 20-22, 25-28. Plaintiff refused to pay Defendants the fee for the November 2021 cleaning, and on February 3, 2022, Defendants sent Plaintiff a letter asserting that Plaintiff had breached the contract for infringing on the patent during the November 2021 cleaning and for refusing to pay the fee associated with utilizing Defendants' proprietary method. *Id.* ¶¶ 28, 32; Ex. C. Plaintiff rejected Defendants' demands for payment, and invoked the mediation requirement in their contract. *Id.* ¶¶ 32-33; Exs. D, E, F.

On January 13, 2023, Plaintiff filed the instant action. ECF No. 1. On September 30, 2023, this Court denied Defendants' Motion to Transfer the case. ECF No. 19. On November 27, 2023, Plaintiff filed an Amended Complaint. ECF No. 27. On December 11, 2023, Defendants filed a Motion to Dismiss. ECF No. 36. On January 5, 2024, Plaintiff opposed this motion, and on January 15, 2024, Defendants replied. ECF Nos. 44, 47.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d

---

[2] The Court notes that Defendants assert that Plaintiff did not obtain their authorization, nor were they paid for the 2018/2019 cleaning, which according to them, utilized their proprietary method. *See* Amend. Compl. at Ex. D.

3

224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re*

4

*Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## IV. DISCUSSION

Plaintiff brings five claims against Defendants: fraud, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment of non-infringement of Defendants' patent. The Court will discuss each claim in turn.

### A. Fraud

To state a claim for common law fraud, a plaintiff must show that there was: 1) a material misrepresentation of a presently existing or past fact, 2) knowledge or belief by the defendant of its falsity, 3) an intention that the other person rely on it, 4) reasonable reliance on such misrepresentation by the other person, and 5) damages resulting from that reliance. *See Quality Eye Assocs., LLC v. ECL Grp., LLC*, No. 22-2489, 2022 WL 2916053 at *3 (D.N.J. Jul. 25, 2022). In addition, fraud claims are subject to heightened pleading requirements pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Thus, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s particularity requirement a plaintiff must: "(1) state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged; and (2) plead or allege the precise date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (holding that a "plaintiff alleging

5

fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue").

Here, Plaintiff fails to plead with the required specificity of Rule 9(b). For example, based on the threadbare averments of the Amended Complaint, the Court cannot determine what Defendant Frosolone said or did to misrepresent the patent to Plaintiff. The only assertions that explicitly references Defendant Frosolone's involvement vaguely states that he was personally involved and made representations regarding the scope of the patent at issue:

- "[Defendant] Frosolone was the personification of Northern Divers with respect to all material representations . . ." Amend. Compl. ¶ 4, and

- "[Defendant] Frosolone personally participated in each of the misrepresentations concerning the patent in order to obtain substantial fees from ASI . . . Each act complained of against Northern Divers herein was personally committed by [Defendant] Frosolone." Amend. Compl. ¶ 35, and

- "Defendants represented the worked performed at the PSEG facility came within the terms of its patented methodology . . . [Defendant] Frosolone personally made such representations as the personification of Northern Divers in order to personally benefit from such fees . . ." Amend. Compl. ¶ 37.

These statements are insufficient and fail to provide the Court with the necessary details for it to evaluate what statements Defendant Frosolone made, whether such statements could be material, or if it was reasonable to rely on such representations. Details such as the "what, when, where and how of the events at issue," are necessary to state a claim of fraud, and none of those details are provided here. *U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 307. Thus, the Court must grant Defendants' Motion to Dismiss as to the fraud claim against Defendant Frosolone.[3]

---

[3] Additionally, New Jersey law requires a plaintiff, when seeking personal liability for an officer of a company, to sufficiently allege the underlying intentional conduct to justify the application of the "tort participation theory" as asserted by Plaintiff here. *See Rainforest Distrib. Corp. v. Vybes L.A. LLC*, No. 20-634, 2021 WL 3879099 at *11 (D.N.J. Aug. 31, 2021). Given that Plaintiff failed to plead with the requisite specificity under Rule 9(b), Plaintiff's theory of personal liability fails as a matter of law. *Id.* For all of Plaintiff's other contract-based claims against

This analysis and conclusion extends to Defendant Northern Divers: similarly, Plaintiff does not inject precision or any measure of substantiation to its fraud allegations, rather Plaintiff pleads in general, conclusory terms. *See, e.g.*, Amend. Compl. ¶ 10 ("[N]orthern Divers claimed to have applied for a patent for a proprietary technique to clear pipes that involved special pipe attachments, additives, and bubblers.[4] Defendants' misrepresented that its proposed services were subject to the patent application and proprietary, and details of the patent application were not disclosed to ASI or PSEG."). There is no description of the wording of the "misrepresentation," who specifically made the misrepresentation and to whom, when the misrepresentation was made in the course of negotiating the 2015 contract between the Parties, or if more than one misrepresentation was made over the course of their dealings together. Thus, the Court must grant Defendants' Motion to Dismiss Plaintiff's fraud claims and dismisses them without prejudice.

### B. Breach of Contract

To show that a breach of a contract occurred, the movant must allege (1) that there was a valid contract between the parties; (2) the movant fulfilled their own contractual obligations; (3) a breach of that contract occurred; and (4) the movant sustained damages because of the breach. *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 734 Fed. App'x 101, 105 (3d Cir. 2018). Further, a complaint alleging breach of contract "must, at a minimum, identify the contracts and provisions breached," by "connect[ing] [the] obligation to specific wording in the agreement." *Quality Eye*

---

Defendant Frosolone, New Jersey law requires a plaintiff to pierce the corporate veil to hold an officer of a corporation personally liable for non-torts. *Id.* To pierce the corporate veil, a plaintiff must assert that there be "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist[s] [and] the circumstances must indicate the adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id.* Plaintiff's allegations are too conclusory and non-specific as to these elements to justify piercing the corporate veil and thus all claims against Defendant Frosolone must be dismissed.

[4] The Court notes that the patent contains dependent claims that include attachments, additives, and bubblers. *See* Amend. Compl. at Ex. B, 10:15-23, 30-31. However, the independent claim, which represents the widest scope the patent can cover, does not include attachments, additives, or bubblers. *Id.* Ex. B, 9:8-45. Thus, depending on the actual wording of the statement presented to Plaintiff, this general assertion regarding some of the elements of the patent may or may not be a misrepresentation of the patent and its applicability to the work at issue in the contract.

7

*Assocs., LLC,* 2022 WL 2916053 at *2. However, the "spirit and the whole purpose of the agreement" must be considered when evaluating whether a plaintiff has sufficiently plead a breach of contract claim. *Id.*

The contract itself is the guidepost of the Court's analysis. *See* Amend. Compl. Ex. D. The contract has limited language relating to the work to be provided by Defendants, providing in pertinent part:

- "[Defendants] will perform all the supervision for the completion of[] [t]he vacuuming by high volume displacement of sand, muck, and debris in the 42" x approx. 750' HDPE pipe[.]"

- "[Defendants] will provide the onsite setup and operation supervision and supervision only for the cleaning [o]f said pipe at the Salem Power utility plant in Newark New Jersey."

- "[Defendants] will provide all travel and expenses with work truck tools and mis may [sic] needs on site [w]ith 42" flange fitting and hardware."

- "[Defendants] and [Plaintiff] will work together under the understanding of our confidentiality agreement [a]nd in no way, will any confidential information be used or repeated until a final agreement between both parties is completed for future system use by [Plaintiff]."

*Id.* The contract incorporates a Confidentiality Agreement that identifies Defendants as the owners of "certain confidential information and inventions relating to water sampling and analysis" called the "Freshwater Intake Cleaning Process," otherwise referred to as the "System." *Id.* The Confidentiality Agreement notes that "It is necessary for [Defendants] to disclose to COMPANY certain Confidential Information relating to the System for the purpose of evaluating the use of COMPANY's products and/or services in connection with the System ("Purpose")[.]" *Id.* "Confidential Information" is defined as "any and all information not generally known to the public, technical or otherwise, disclosed to COMPANY regarding the System, whether disclosed in writing, orally, visually, by submission of products or samples or other materials, or otherwise. Confidential Information includes, but is not limited to, [Defendants] interest in the System and

8

Purpose, Work Product, trade secrets, specifications, technical descriptions, discussions with [Defendants], and the fact that [Defendants] is working with COMPANY." *Id.* It is clear from the contract and the incorporated Confidentiality Agreement that the spirit and purpose of the contract was for Plaintiff to receive the benefit of Defendants' proprietary method for cleaning pipes through "onsite setup" and "operation supervision" while "working together under the . . . confidentiality agreement." *Id.*

Here, Plaintiff asserts that Defendant breached the contract when it did not provide any proprietary information or utilize the System during the 2015, 2017, and 2018/2019 operations. *See id.* ¶¶ 11-19. Plaintiff specifically notes that Defendants' "limited input" on "pump layout" did not impart or use the proprietary method or System, and that the layout itself was provided by a different vendor and was not subject to the System. *Id.* ¶ 14. Plaintiff asserts that all methodologies used to clean the pipe at issue in the 2015, 2017, and 2018/2019 operations were standard and in use prior to Defendants' System and performed "in the same manner utilized" for almost "26 years at Salem, prior to any involvement" by Defendants. *Id.* 18. The Court finds that Plaintiff's allegations in the Amended Complaint sufficiently links the breaching conduct to a specific contractual obligation.

Taking Plaintiff's pleadings as true, it is plausible that their allegations could raise a right to relief based on a breach of contract theory. There was a valid contract between the Parties, Plaintiff fulfilled their obligations under the contract by providing all the manual labor and parts. However, arguably, Defendants breached that contract when it did not provide the contracted-for support of its System and proprietary methods, and Plaintiff sustained damages in the amounts paid to Defendants. Therefore, Defendants' Motion to Dismiss Plaintiff's contract claim at this stage is denied.

## C. Breach of the Covenant of Good Faith and Fair Dealing

Under New Jersey law, all contracts are deemed to contain an implied covenant of good faith and fair dealing. *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 270 (3d Cir. 2004); *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002). A claim for breach of that covenant "arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Wade*, 172 N.J. at 345 (quoting *Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129 (1976)). "In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *Graddy v. Deutsche Bank*, No. 11-3038, 2013 WL 1222655 at *4 (D.N.J. Mar. 25, 2013). A complaint alleging a breach of an implied covenant must allege more than a simple breach of the terms of the contract. *See Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 417 (D.N.J. 2021). A plaintiff cannot prevail on both theories under New Jersey law: "when a party breaches an explicit term of a contract, a plaintiff can only bring a breach of contract claim, as the defendant cannot also be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." *Gap Props., LLC v. Cairo*, No. 19-20117, 2021 WL 5757410 at *5 (D.N.J. Dec. 3, 2021).

Plaintiff asserts that its breach of the covenant of good faith and fair dealing is plead in the alternative. However, the conduct that Plaintiff asserts violates the covenant of good faith and fair

10

dealing is the same for its breach of contract claim, which is impermissible. *See Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267 at *5 (D.N.J. Feb. 24, 2016); *compare* Amend. Compl. ¶¶44-45 ("Northern Divers *failed to provide patented and proprietary services as represented* to ASI, even though such alleged services and its "system" were the basis for its retention by ASI Northern Divers only provided minimal observation services and input on pump layout, which were not patented or proprietary. Northern Divers' failure to provide services as represented constitutes a breach of its contract with ASI."); *with* ¶ 49 ("By reason of Northern Divers' *misrepresentations concerning the scope of its patent and failure to perform patented methodologies* for the work at the PSEG facility, Northern Divers defeated the purpose of the contract and breached the implied covenant of good faith and fair dealing.") (emphasis added). Therefore, Defendants' Motion to Dismiss must be granted on Plaintiff's breach of the covenant claim. However, the Court will dismiss this claim without prejudice.

### D. Unjust Enrichment

To assert a valid claim of unjust enrichment, a "plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust," and that he or she "expected renumeration from the defendant at the time [he or she] . . . conferred a benefit on [the] defendant and that the failure of renumeration enriched [the] defendant beyond its contractual rights." *Angelo v. Fid. & Guar. Life Ins. Co.*, 18-3224, 2019 WL 330521 at *4 (D.N.J. Jan. 25, 2019) (internal citations omitted). Pursuant to New Jersey law, recovery under unjust enrichment "may not be had when a valid, unrescinded contract governs the rights of the parties," *Norcom Rsch., LLC v. Net2Phone Global Servs., LLC*, Nos. 22-1243, 22-1293, 2023 WL 1098188 at *4 (3d Cir. Jan. 30, 2023), and while pleading in the alternative is permissible, if a plaintiff pleads the existence of a contract, it must also call its validity into question in order to

state a facially plausible claim of unjust enrichment. *MZL Capital Holdings, Inc., v. TD Bank, N.A.*, No. 14-5772, 2015 WL 4914695 at *9 (D.N.J. Aug. 18, 2015).

Here, the Court notes that in New Jersey, unjust enrichment is not an independent theory of liability, and a party may not recover on both a breach of contract claim and an unjust enrichment claim. *Id.* Because the Court has found Plaintiff's pleadings regarding fraud to be deficient and is permitting the contract claim to proceed, the validity of the contract is no longer in question, and thus the unjust enrichment claim is no longer facially plausible. *Id.* Similar to the breach of the covenant of good faith and fair dealing claim, the Court dismisses Plaintiff's unjust enrichment claim without prejudice, so Plaintiff may reassert an unjust enrichment claim if discovery bears out evidence that warrants it and fails to support a breach of contract claim.

### E. Declaratory Judgment of Non-Infringement

The Declaratory Judgment Act, ("DJA"), provides that in a case of actual controversy within a court's jurisdiction, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(2000). The purpose of a declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side," and in patent cases, "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Amperex Tech. Ltd. v. Maxell, Ltd.*, No. 21-8461, 2021 WL 4398804 at *2 (D.N.J. Sept. 27, 2021) (internal citations omitted). For a plaintiff to assert a valid need for a declaratory judgment, a plaintiff must demonstrate that there is a substantial controversy between the parties of adverse legal interests and demonstrate that there is sufficient immediacy and reality to warrant the

issuance of a declaratory judgment. *Acutas Therapeutics Inc. v. Genevant Sics. GmbH*, No. 23-4200, 2024 WL 2271097 at *7 (D.N.J. May 20, 2024).

Plaintiff points to letters exchanged by counsel prior to litigation to support its claim to support the issuance of a declaratory judgment. On February 3, 2022, Defendants wrote to Plaintiff asserting that Plaintiff used, without authorization, Defendants' System and proprietary methods subject to the patent to clear a pipe in 2021 without providing payment to Defendant pursuant to the Parties' 2017 contract. *See* Amend. Compl. at Ex. C. In its letter, Defendants further asserted that Plaintiff's operation in 2021 was "at least a breach of the Contract." *Id*. Despite the breach, Defendants sought to amicably resolve the conflict on the condition that Plaintiff pay the $100,000.00 owed for utilizing Defendants' System within 10 days of the letter. *Id*. In addition, Defendants offered an opportunity for Plaintiff to license the system pursuant to the patent so Plaintiff could utilize the proprietary cleaning method going forward. *Id*. Defendants asserted that if Plaintiff did not pay the required fee, they would proceed to mediation per the contract. *Id*.

On February 22, 2022, Plaintiff responded to Defendants' February 3 letter. *Id*. at Ex. E. Plaintiff asserted that it did not utilize any patented or proprietary methodology for the cleaning operation in 2021, and that Defendants provided "nothing of value" to the previous operations. *Id*. Plaintiff outlined their cleaning process as non-infringing by comparing their process to the patent as follows:

| Patent | Work Performed at PSEG |
| --- | --- |
| Patent is for intake pipes and intake structures. | PSEG work was on independent discharge pipe |
| Cleaning is done with waterflow against natural flow | Water flushed out using standard pumps in the same direction as flow |
| Attachments, bubblers and additives in patent | No attachments, bubblers or additives |
| Variety of water pumps | Standard industry rental pumps |
| Proprietary turbulence flanges | No special flanges |
| Forced air with compressors | No forced air or compressors used |
| Flow directing attachment | No attachments |

13

Plaintiff asserted that Defendants misrepresented their patent's scope and noted that if they "persist[] in its improper demands" that Plaintiff would pursue legal action. *Id.*

On September 22, 2022, Defendants wrote to Plaintiff again. *Id.* at Ex. D. The letter rebutted Plaintiff's understanding of the cleaning process and asserted that the patent applied to Plaintiff's cleaning operations pursuant to the doctrine of equivalents, arguing that discharge pipes are substantially similar to intake pipes as claimed in the patent. *Id.* It further noted that the patent was not limited to cleaning methods utilizing only reverse flow, or attachments, bubblers, and additives, or specific kinds of pumps or compressors: rather all of these elements are simply part of the various methods described in the specification and illustrations within the patent. *Id.* In closing, Defendants stated that they would take this matter to litigation if Plaintiff did not agree to resolve the dispute amicably within 15 days. *Id.*

On October 17, 2022, Plaintiff responded. *Id.* at Ex. F. Plaintiff insisted that the work performed by Plaintiff never utilized the patent and invoked the mediation provision of the contract. *Id.* On November 27, 2023, Plaintiff filed the instant suit.

Defendants argue that the letters do not rise to "the level of an explicit threat by the patentee" to warrant declaratory relief. However, this is not the standard by which the Court must make its determination. "The fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *LY Berditchev, Corp. v. Truss Cosms. Corp.*, No. 22-4242, 2023 WL 334539 at *5 (D.N.J. Jan. 19, 2023) (quoting *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987)). The Court must determine whether "the dispute [is] definite and concrete, touching the legal relations of parties having adverse legal interests; and that it [is] real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law

14

would be upon a hypothetical state of facts," essentially an "all the circumstances" style test, in which proving a "reasonable apprehension of suit" is one of multiple ways that a plaintiff could demonstrate a justiciable controversy. *D&R Communs., LLC v. John Garrett& Garrett Group, Inc.*, No. 11-413, 2011 WL 2418246 at *3 (D.N.J. Jun. 13, 2011) (internal citations omitted). A fear of future harm that is only subjective is insufficient, rather there must be some affirmative act by the patentee. *Id.*

Here, the letters indicate that Defendants caused Plaintiff to believe there was an infringement problem: while Defendants' initial letter addressed the issue through the lens of contract, the act Defendants were seeking redress for was the unauthorized use of the patent and proprietary method in the 2021 cleaning operation. The accusation that Plaintiff engaged in the unauthorized use of a patent is "at the very least an implied allegation of infringement, which leads to an actual controversy." *Id.* at *4 (citing *Prasco, LLC v. Medicis Pharm. Corp.* 537 F.3d 1329, 1340 (Fed. Cir. 2008)). Other courts have found that simply stating a given product is "of initial concern" in relation to another patent can be sufficient to establish the implication of an allegation of infringement and thus establish jurisdiction. *Id.* (quoting *Int'l Dev., Corp. v. Richmond*, No. 9-2495, 2009 WL 3818141 at *5 (D.N.J. Nov. 13, 2009)). Here, the Parties letters go far beyond mere implication. Defendants' September 22 letter affirmatively threatens legal action for patent infringement. *See* Amend. Compl. at Ex. D.

The Court finds that Plaintiff has put forth sufficient evidence to establish a claim under the Declaratory Judgment Act, and therefore Defendants' Motion to Dismiss this claim is denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, (ECF No. 36), is **GRANTED IN PART AND DENIED IN PART.** An order consistent with this Opinion will be entered.

July 26, 2024

KAREN M. WILLIAMS, U.S.D.J.